HALL v. KING.

2 711
4 327

INTEREST — *plea that promise to pay was not in writing.*  To an action for money loaned, and for interest upon money loaned and upon an account stated, a plea that the several promises were to pay interest at a greater rate than ten per cent per annum, and that such promises were not in writing, is bad.

*Statute of frauds.*  In such action a plea that the promises were made upon sale of certain goods exceeding in value the sum of $50, and that the promises were not in writing, is bad.

PROMISSORY NOTE — *whether action may be maintained for interest upon, after surrender of note.*  If, upon payment of the principal sum due on a promissory note, the maker promise to pay interest due on the same note at a future day, and the payee thereupon cancel the note, and deliver it to the maker, to enable the latter to show it to other parties with whom he has dealings, an action may be maintained upon such promise.

And parol evidence of conversations between the parties in regard to such note and the payment of it, may be received to establish such promise.

NEW TRIAL — *where the evidence is conflicting,* and the judgment appears to be correct, a new trial will not be granted.

*Appeal from District Court, Arapahoe County.*

THIS is an action of assumpsit.  In the declaration the plaintiff alleges that on February 1, 1874, defendant was

indebted to him in the sum of $3,500 for interest upon, and for the forbearance and use of large sums of money, before then due from the defendant to the plaintiff, for long spaces of time before then elapsed, forborne by plaintiff to the defendant at the request of the latter, and for so much money before that time lent by the plaintiff to the defendant, and for so much money due from defendant to the plaintiff, on an account stated between them ; and that being so indebted, the defendant, on the day and year last aforesaid, promised the plaintiff to pay him the said sums of money above stated when requested,

The defendant filed four pleas : 1st. Non-assumpsit. 2d. That none of the supposed causes of action accrued within six years next before the commencement of the suit. 3d. That the supposed promise was an agreement to pay interest at a greater rate than ten per centum per annum, and there never was any memorandum or note thereof, signed by the defendant. 4th. That the supposed promise was an agreement founded upon the sale of certain goods for the payment of a sum of money exceeding $50, and that there is no memorandum or note thereof, signed by the defendant. Replication to the second plea, that the causes of action sued on did accrue to the plaintiff within six years before the commencement of the suit.

The plaintiff demurred to the 3d and 4th pleas — demurrer sustained.    Trial by the court without a jury ; finding and judgment for plaintiff $1,061.48 and costs.

At the trial certain questions were put, and witness' answers received against the objections of the appellant — which action of the court below is here assigned for error, — the same are as follows, viz. :

Dean W. King testified for the plaintiff :

Question.—"State whether the defendant here is owing you any money, and for what ?"

Answer.—"He is owing me."

Question.—"State on what account he is owing you — what it is for ?"

Answer.—"It is on account of a note that he gave me for borrowed money."

Question.—"Has that note ever been surrendered?" [to which the defendant objected, because the suit was not brought on any note, nor upon a lost note, nor had any step been taken under the statute for the production of any note. Objection overruled, and defendant excepted.]

Question.—"Where is that note, if you know?"

Answer.—"I don't know; no, sir, unless I tell what was done with it."

Question.—"Where did you see the note last?"

Answer.—"I saw it in the hands of Mr. Hall."

Question.—"How did it come in his hands?"

Answer.—"I delivered it to him."

Question.—"What else was done at the time you delivered the note to Mr. Hall?"

Answer.—"The day the note was delivered, there was an agreement made between Mr. Hall and myself."

Question.—"State that agreement?"

Answer.—"He notified me a very short time before to meet him in Denver; that he had some money for me; I came in and met him at the Ford House or Charpiot's and I went up to his room with him; he told me he had some money, provided he could do a certain thing; I asked him what that thing was, and he said he wanted to go to Europe, but he was afraid he could not accomplish what he wanted to accomplish, unless he could take up all of the paper he had in Colorado, and be able to say that he had not a dollar's worth of paper out in the Territory; I told him I had been paying interest on this money since 1867, and that there was a suit commenced against me in the First National Bank, for, I cannot give you the exact amount, but it was near then $2,800 or $2,900; and, after talking it over a while, he guessed he could go down and fix it with Moffat, so that, by paying a portion of it, the rest could run a year; I won't say a year or what it was, but it could run a while, and I agreed to meet him again at some hour in the afternoon, and I met him again and we went down to the First National

Bank; I went down to the bank and he paid that day the exact face of the note."

Question.—" State how much he paid.

Answer.—"He paid $2,100, which was the exact face of the note, and he told me before we went to the bank, that he would see Moffat and fix it, so the balance of the debt against me at the bank could run ; and when I met him and Mr. Moffat together at the bank, the arrangement seemed to be fixed ; he agreed with me that he would see me out of that debt at the bank, at least that was his expression, every word ; if I stated that the balance of the account at the bank was to run a year I will recall it; it was not a year ; this was in the fall; October or November, I think, and it was to run until some time next season ; I cannot tell, I think it was a year ; this payment of $2,100 was made, as near as I remember, in the latter part of October or fore-part of November, 1872; when he paid me the money, the note was given up to Mr. Hall."

Here, under a notice from the plaintiff, the note above mentioned was produced by the defendants' attorneys, and was identified by the witness, and was introduced in evidence, and is as follows, viz. :

" GEORGETOWN, Col., *October* 20, 1867. (The 7 being written over an 8, or *vice versa*, which, is uncertain) ; $2,100 in the left hand upper corner. " Eight months after date, I promise to pay to Dr. D. W. King or order, twenty-one hundred (2,100) dollars, with interest, at the rate of two per cent per month, payable at the banking house of George T. Clark & Co., at Georgtown, Col., (signed) J. W. Hall," on the face of which is indorsed, " Received payment, in full, to date, December 5th, 1872, D. W. King." And the witness further testified :

Question.—" What was that note given for ?"

Answer.—" Borrowed money."

Question.—" State how much has ever been paid you upon this note ?"

Answer.—" Well, it was given up when I wrote that receipt across it, and $2,100 was paid last year; there was $94 more paid, making $2,194 in all." ·

Question.—" Can you explain to the court how you came to sign that receipt for the full amount of the note?"

Answer.—"I can; he stated to me that he wanted to go to Europe, and that some English parties knew he had a good deal of paper. He wanted to be able to go there, and show them that he had all of his indebtedness with him; that was the plea under which I gave up the note; I supposed I had tested the man's honor." Witness further testified that he gave up the note on that recommendation and at defendant's request, and that since the payment of the $2,100, he had been paid $94 on that indebtedness, some time in October last, when the panic occurred. Here witness was shown a certain letter (marked B by the court), bearing date October, 1873, and stated that he knew it to be in Mr. Hall's handwriting; had no other claim on defendant for any indebtedness except that growing out of this transaction.

Letter marked B is thus:

"DEAR DOCTOR.—Yours at hand. I will send check for ninety-four dollars in a few days, but cannot do it until the banks get straightened out a little.
        (Signed)                "J. W. HALL."

The witness further testified:

Question.—"At the time you surrendered that note, was there any thing said about a balance due you; if any thing, state what it was?"

Answer.—"Yes, sir; there was."

Question.—"State what that was?"

Answer.—"He stated in the presence of Mr. Moffat and myself that he presumed the principal was more than I expected to get at one time; that he could now go to England and carry every thing with him; that he could go and say truly that he had not a dollar's worth of paper out in Colorado."

Question.—"What was said about the balance that was due you?"

Answer.—"I don't know as I can repeat the language, but he either told me or told Moffat, he congratulated me—one or both of us—he congratulated me that he had got the matter fixed at the bank, so that it would not trouble me until he got back next summer;—then he could fix it."

Question.—"Fix what; the balance due on that note?"

Answer.—"That was connected with that. After paying the bank it was varied a few dollars from $900. Mr. Sayre and Wright ought to know. It is the note you sued me on," [to Mr. Wright].

Question.—"How much was the balance that was talked about being due you on that note?"

Answer.—"There was no sum stated that was due me on it."

Question.—"I understood you, a little while ago, the promise was that he would take care of this indebtedness at the bank; how much was that over and above the amount he paid on that note?"

Answer.—"That balance was about $900."

Question.—"You can state whether or not this $2,100 was accepted by you as full satisfaction for that whole indebtedness?"

Answer.—"No, sir, it was not."

On cross-examination:

Question.—"Was it not agreed between you and Col. Hall at the time this settlement was made, this $2,100 paid you was to be every thing; was to be a complete and full settlement between you?"

Answer.—"No, sir. It was not so talked or hinted between either of us."

On re-examination:

Question.—"Have you had any conversation with Hall since you received the money in reference to the balance of the note?"

Answer.—"Yes, sir; both by letter and verbally."

Question.—"State what occurred verbally?"

Answer.—"Yes, sir. I visited him several times."

Witness further stated that he met defendant at the legislative rooms; defendant said that he had received a note from plaintiff's attorney, and got mad and did not answer it. Witness went on to tell him how the bank was crowding that matter; that they had advertised his security (the man who indorsed the note with him), and were going to sell him out; that witness did not know how to save his wife's place, except the defendant helped him as he agreed at the bank; defendant replied that he had not a dollar, but was expecting some money from the east; finally before witness left him, defendant promised to telegraph east, and wanted witness to come down some day, three or four days ahead; witness told him he had to borrow money to pay car fare that morning; defendant said come down on Friday, and promised to furnish his car fare home, any way.

Re-cross-examination.—Witness thought the words "as you agreed," were used in conversation with the defendant at the legislative hall; he went there to claim it of the defendant as money owed witness; never heard any objection; went to him as a matter of right, and presented to defendant what he owed him (witness), morally, legally, and every other way; did not tell him how much he owed, but many times told him that he did owe; could not remember every time they had talked of the matter; he has admitted that he owed witness; witness never heard of his denying it; supposed the defendant said he owed him for borrowed money on the note as they had had no other transaction.

Defendant moved for a nonsuit, for the following reasons: that the promissory note in evidence and the debt represented thereby had been released by the plaintiff; because there is no evidence of any cause of action; because the evidence of the cause of action, if any there be, is variant with the writings in evidence of the parties and for other good and sufficient reasons. Motion overruled, and exception taken, and this ruling is assigned for error.

Appellant testified in his own behalf that he paid the $2,100 mentioned by appellee in full settlement of the note, and that he did not promise to pay any further or other sum upon it. He explained other negotiations and transactions between appellee and himself, and averred that the note was surrendered to him in consideration that he would influence the First National Bank to allow to appellee further time for the payment of the balance due.

MESSRS. SAYRE, WRIGHT & BUTLER, for appellant.

Mr. J. W. BLACKBURN, for appellee

STONE, J.   The third and fourth pleas of the defendant present no defense to the action, and the demurrer to the same was properly sustained.

The only issue made in the record is, is the defendant indebted to the plaintiff a sum of money for interest upon and for the forbearance and use of money as alleged in the declaration ?

The evidence admitted by the court, we think, was relevant and material, and tended to prove the issue, and was properly received.

This was a trial by the court without the aid of a jury, and the question of the admissibility of evidence, strictly speaking, can seldom be raised, since, whatever the ground of objection, the evidence objected to must of necessity be heard by the judge, in order to determine its character and value.

In such cases, the only effect is upon the sufficiency and weight of the evidence.   1 Greenl. Ev. 65.

The judgment in this case is authorized by the evidence, and this court will not reverse the judgment of the court below, when, on an inspection of the whole record, we think substantial justice has been done, and no rule of law violated.

*Judgment affirmed.*